**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

WMDC AND WML, LLC,

                                Plaintiffs,

                    v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED IN SCHEDULE "A",

                           Defendants.

Case No. 25-cv-00961

DEMAND FOR JURY TRIAL

**COMPLAINT**

██████████████████████████████ (collectively, "Plaintiffs" or "██"), by and through its undersigned counsel, hereby file this Complaint for design patent infringement under the Patent Act, copyright infringement under the Copyright Act, trademark infringement under the Lanham Act, offering for sale and selling counterfeit goods in violation of Plaintiffs' exclusive rights, violation of the Illinois Deceptive Trade Practices Act, and civil conspiracy against the Partnerships and Unincorporated Associations Identified in Schedule "A" ("Defendants"). In support hereof, Plaintiffs, state as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, et seq., the Lanham Act, 15 U.S.C. § 1051, et seq., the Copyright Act, 17 U.S.C. § 101, et seq., and 28 U.S.C. §§ 1338(a)-(b). This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims

that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each Defendant directly targets business activities toward consumers in the United States, including Illinois, through their operation of or assistance in the operation of the fully interactive, commercial internet stores operating under the Defendant domain names and/or the Defendant Internet Stores identified in Schedule A. Specifically, each of the Defendants directly reaches out to do business with Illinois residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores that sell products featuring ███████'s patented design, sell products using or bearing infringing versions of ███████'s federally registered copyrighted works, and/or sell products using counterfeit versions of ███████'s federally registered trademarks directly to Illinois consumers. In short, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II.     INTRODUCTION

3.     Plaintiffs file this action to combat online infringers and counterfeiters who trade upon Plaintiffs' reputation and goodwill by (1) making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products that infringe ███████'s design patent (U.S. Reg. No. ███████)) (the "███████" Design), (2) selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of ███████'s federally registered trademarks ███████ (U.S. Reg. No. ███████) and ███████████████████ (U.S. Reg. No. ███████) ("███ ███████ Trademarks"); and/or (3) using ███████'s copyrighted works (U.S. Reg. No. VA ██

██████ ) (the ████████ Works") in connection with the sale and advertising of the infringing products. *See* **Exhibit 1**. The Defendants created internet stores (the "Defendant Internet Stores" or the "Stores") by the dozens and designed them to appear to be selling genuine ████████ branded products when in fact the Stores are selling counterfeit versions to unknowing customers and/or making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use infringing products to unknowing consumers.

4.     The Defendant Internet Stores share unique identifiers, such as similar design elements of the infringing products offered for sale and, on information and belief, these similarities suggest that the Defendant Internet Stores share common manufacturing sources, thus establishing that the Defendants' counterfeiting and infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their Stores multiple times, opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiffs have been forced to file this action to combat Defendants' willful infringement of Plaintiffs' patented design, copyrighted works, and registered trademarks, as well as to protect unknowing consumers from purchasing infringing products over the Internet. Because of Defendant's actions, Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and through its loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented design. Accordingly, Plaintiffs seek injunctive and monetary relief.

### III.    PARTIES

**Plaintiffs** ███████████████████████████████

5.     Plaintiffs are ████████ limited liability companies and are the creators and sellers of █████████████████████████████████████████ ████████████████████████. ("████████ Products"). They are known for their durable, easy-to-use design. With a patented design, ███████████████████████████ ████████████████████████████████████████. This innovative tool allows users to ██████████████████████████████████████████████████ ████. Plaintiffs sell these designs through its ████████████ brand, which allows consumers to purchase genuine products through the company's e-commerce marketplaces. The ████████ Products have become enormously popular and even iconic, driven by Plaintiffs' exacting quality standards and innovative designs. Among the purchasing public, genuine ████████ Products are instantly recognizable as such in the United States and around the world.

6.     Plaintiffs launched ████████████ branded products in ████ and continue to sell the products through ████████s website[1] and ████████ storefront[2]. Plaintiffs' founder and inventor created the unique ████████ design after observing a demand in the marketplace for a ████████████████████████████████████████████████████████ ████████████████████████████. Since ████████████, Plaintiffs have introduced two variations of the ████████████ (████████████████████████████) through its e-commerce marketplaces. ████████'s unique products have been advertised with its federally registered trademarks for several years, both before and after registration. Plaintiffs continue to heavily advertise its unique products on all its e-commerce marketplaces, social media, advertisements,

---

[1] ████████████████████████
[2] ████████████████████████████████████████████████

and product demonstration videos to educate consumers on both its products and trademarked name. Its online marketplaces and social media feature original content, reviews, and testimonials for ███████ Products.

7. Plaintiffs are the manufacturer, distributor, importer, and retailer of ████████ Products. They engaged in the business of distributing and retailing its ████████ products within the Northern District of Illinois under the federally registered ████████ Trademarks. Defendants' sales of the counterfeit products in violation of ████████'s intellectual property rights are irreparably damaging the Plaintiffs.

8. ████████ Products are known for their distinctive patented design. ████████ ████████ that use these design are associated with the quality and innovation that the public has come to expect from ████████ products. Plaintiff uses this design in connection with its ████████ branded products, including, but not limited to, the following patented design.

| Patent Number: US ████████ | | Issue Date: ████████ | |
|---|---|---|---|
| **CLAIM** | | | |
| Figure 1 | ████████ | Figure 2 | ████████ |
| Figure 3 | ████████ | Figure 4 | ████████ |

| Figure 5 |  | Figure 6 | |

9.      ████████████ is the lawful assignee of all rights, title, and interest in and to Patent Number US ████████. The ███ Patent was lawfully issued on ████████████, with ████████████ as the named inventor.

10.     Plaintiffs also have registered the trademarks ████████████ (U.S. Reg. No. ████████) and ████████████████████████ (U.S. Reg. No. ████████). ████████████ Trademarks are distinctive and identify the merchandise as goods originating from the Plaintiffs. The registrations for ████████████ Trademarks constitute prima facie evidence of their validity and of Plaintiffs' exclusive right to use ████████████ Trademarks pursuant to 15 U.S.C. § 1057(b). ████████████ Trademarks have been continuously used and have never been abandoned since their first use.

11.     Plaintiffs use ████████████ Trademarks to identify its goods. The trademarks are distinctive when applied to Plaintiffs' goods, signaling to the purchaser and consumer that the products are from Plaintiffs and are made and manufactured to Plaintiffs' original specifications and standards.

12.     Since its initial launch of the original ████████████ branded products and as of the first use of ████████████ Trademarks in ████, ████████'s trademarks have been the subject of substantial and continuous marketing and promotion by Plaintiffs throughout the United States and, due to its strong internet presence, throughout the entire world. Plaintiffs have and continue

to widely promote and market their trademarks to the general public, including through its website. Genuine and authentic ███████ branded products are offered and sold by Plaintiffs directly through its website and its Amazon marketplace.

13. Plaintiffs have expended substantial time, money, and other resources to develop, advertise, and otherwise promote ███████ Trademarks. As a result, consumers recognize that products bearing the distinctive ██████ Trademarks originate exclusively from Plaintiffs.

14. ██████████████ is also the owner of a copyright registration (U.S. Reg. No. VA ██████). The registration information for the ██████ Works and copies of the corresponding images are shown in **Exhibit 1** attached hereto. Upon information and belief, the copyright registration has an effective date that predates the Defendants' acts of copyright infringement.

15. Since their first publication, the ██████ Works have been used to sell ███████ Products. Plaintiffs' products and their accompanying copyrighted works have been the subject of substantial and continuous marketing and promotion by Plaintiffs throughout the United States and, due to its strong internet presence, throughout the entire world.

16. Among the exclusive rights granted to Plaintiffs under the U.S. Copyright Act are the exclusive rights to reproduce, distribute, and display the ██████ Works to the public.

**Defendants**

17. Defendants are individuals and entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the state of Illinois and in this Judicial District, through the operation of fully interactive commercial websites and online commercial marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United

States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell infringing products to consumers within the United States, including Illinois and in this Judicial District.

18.     Defendants are an interrelated group of infringers and counterfeiters who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine ███████ Products, while they actually sell inferior imitations of Plaintiffs' ███████ Products. Defendants also knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products. The Defendant Internet Stores share unique identifiers, such as common design elements, the same or similar counterfeit products that they offer for sale, similar counterfeit product descriptions, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, and identically or similarly priced counterfeit products and volume sale discounts. As such, the Defendant Internet Stores establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same transaction or occurrence. The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiffs to learn the precise scope and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

## IV.     DEFENDANTS' UNLAWFUL CONDUCT

19.     The success of Plaintiffs' brand has resulted in significant infringement and counterfeiting. Consequently, Plaintiffs have identified numerous marketplace listings on e-commerce platforms such as, but not limited to, ███████████████████, that include the Defendant Aliases and which have been offering for

sale, completing sales, and exporting illegal products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating Defendant Aliases. E-commerce sales, including e-commerce internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* __Exhibit 2__, U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*. According to the CBP report, over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Approximately 60% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

20.     Groups of counterfeiters, such as Defendants here, are typically in communication with each other. They regularly participate in QQ.com chat rooms and communicate through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

21.     Counterfeiting rings take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat counterfeiting. For example, counterfeiters take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See* __Exhibit 3__, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and

counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Illinois residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold counterfeit products to residents of Illinois.

22.     Upon information and belief, at all relevant times hereto, the Defendants in this action have had full knowledge of Plaintiffs' ownership of the ███████ design patent, trademarks, and copyright ("███████ Intellectual Property"), including its exclusive right to use and license such intellectual property and their associated goodwill. Defendants' Internet Stores also use the same pictures to advertise their infringing products that Plaintiffs use on its webpage and other online marketplaces to sell and advertise its genuine and original ████████ Products, sowing further confusion among potential purchasers.

23.     Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant domain names often use privacy services that conceal the owners' identities and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A of this Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

24.     The infringing products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the infringing products were

10

manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

25.    Upon information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiffs, have jointly and severally, knowingly and willfully, offered for sale, sold, and/or imported into the United States for subsequent resale or use products that directly and/or indirectly infringe ███████ Design. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, and Illinois, and, on information and belief, each Defendant has sold Infringing Products in the United States and Illinois over the internet.

26.    Defendants' infringement of the █████ Design in making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products was willful.

27.    Upon information and belief, Defendants also deceive unknowing customers by using ████████ Trademarks without authorization within the content, text, and/or metatags of their websites and marketplace storefronts to attract various search engines on the internet looking for websites relevant to consumer searches for Plaintiffs' ████████ branded products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization tactics and social media spamming so that the Defendants Internet Stores listings show up at or near the top of relevant search results after others are shut down. As such, Plaintiffs also seek to disable domain names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit products.

28.     Defendants' use of ███████████ Trademarks and Works on or in connection with the advertising, marketing, distribution, offering for sale, and sale of infringing products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

29.     Defendants, without authorization or license from Plaintiffs, knowingly and willfully used and continue to use ███████████ Trademarks and Works in connection with the advertisement, offer for sale, and sale of the counterfeit products, through, *inter alia*, the internet. The infringing products are not genuine ███████████ branded products of the Plaintiffs. Plaintiffs did not manufacture, inspect, or package the infringing products and did not approve the infringing products for sale or distribution. Each of the Defendants' Internet Stores offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Illinois.

30.     Defendants' use of ███████████ Trademarks and Works in connection with the advertising, distribution, offer for sale, and sale of infringing products, including the sale of infringing products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

31.     Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling infringing products that infringe upon ████████ Intellectual Property unless preliminarily and permanently enjoined.

## COUNT I
## INFRINGEMENT OF UNITED STATES DESIGN PATENTS (35 U.S.C. § 271)

32.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 31.

33.     ███████████████ is the lawful assignee of all right, title, and interest in the ███████ Design. *See* **Exhibit 1**.

34.     Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe the ornamental design claimed in the ████████ Design either directly or under the doctrine of equivalents.

35.     Defendants have been and are infringing the ██████████ making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the accused products in violation of 35 U.S.C.§ 271(a).

36.     Defendants have infringed the ██████████ ough the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented design. ████ ███ is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

37.     Defendants have infringed the █████████ Design because, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the ornamental designs of the ██████ Design and the overall design features of Defendants' products are substantially the same, if not identical, with resemblance such as to deceive an ordinary observer, including to deceive such observer to purchase an Infringing Product supposing it to be Plaintiffs' product protected by the ████████ Design.

38.     Plaintiffs are entitled to recover damages adequate to compensate for the infringement, including Defendants' profits pursuant to 35 U.S.C. § 289. Plaintiffs are entitled to recover any other damages that are appropriate pursuant to 35 U.S.C. § 284.

**COUNT II**

**COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))**

39. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 38.

40. Plaintiffs' works have significant value and have been produced and created at considerable expense. ███████████ is the owner of each original work, and all works at issue have been registered with the U.S. Copyright Office. *See* **Exhibit 1**.

41. ███████████, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including, but not limited to, the Plaintiffs' copyrighted works, including derivative works.

42. Upon information and belief, Defendants had access to the works through Plaintiffs' normal business activities. After accessing Plaintiffs' works, Defendants wrongfully created copies of Plaintiffs' copyrighted works without Plaintiffs' consent and engaged in acts of widespread infringement through publishing and distributing Plaintiffs' works via online websites and digital markets in connection with the marketing of their counterfeit products. Indeed, every photograph used by Defendants is virtually identical to the Plaintiffs' original works.

43. Plaintiffs are informed and believes and thereon alleges that Defendants further infringed Plaintiffs' copyrights by making or causing to be made derivative works from Plaintiffs' works by producing and distributing reproductions without Plaintiffs' permission.

44. Defendants, without the permission or consent of Plaintiffs, have published online infringing derivative works of Plaintiffs' works. Defendants have violated Plaintiffs' exclusive rights of reproduction and distribution. Defendants' actions constitute an infringement of Plaintiffs' exclusive rights protected under the Copyright Act, 17 U.S.C. § 101, et seq.

45.     Further, as a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not have otherwise realized but for their infringement of the copyrighted Plaintiffs' works. Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of Plaintiff's works.

46.     The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts, and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiffs.

47.     As a result of Defendants' infringement of Plaintiffs' exclusive rights under its copyrights, Plaintiffs are entitled to relief pursuant to 17 U.S.C. § 504, and to recovery of its costs and attorneys' fees pursuant to 17 U.S.C. § 505.

48.     The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502-503, Plaintiffs are entitled to injunctive relief prohibiting Defendants from further infringing Plaintiffs' copyrights and ordering that Defendants destroy all unauthorized copies. Defendants' copies, digital files, and other embodiments of Plaintiffs' copyrighted works from which copies can be reproduced should be impounded and forfeited to Plaintiffs as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiffs, under 17 U.S.C. § 503.

### COUNT III
### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

49.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 48.

50.     This case also concerns a trademark infringement and counterfeiting action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered ███████ Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. ███████ Trademarks are distinctive. Consumers have come to expect the highest quality from Plaintiffs' products bearing its ███████ Trademarks.

51.     Defendants have and continue to sell, market, distribute, and advertise products bearing ███████ Trademarks without Plaintiffs' permission.

52.     ███████ is the exclusive owner of Plaintiffs' Trademarks. Plaintiff's U.S. Registrations for ███████ Trademarks are in full force and effect. *See* **Exhibit 1**. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in Plaintiffs' trademarks and are willfully and intentionally offering counterfeit items bearing Plaintiffs' trademarks. Defendants' willful, intentional, and unauthorized use of Plaintiffs' trademarks is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

53.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54.     Plaintiffs have no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks.

55.     The injuries sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiffs' ███████ branded products.

**COUNT IV**

**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)**

56.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 55.

57.     Defendant's advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in counterfeit versions of Plaintiffs' products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of such products.

58.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have offered and shipped goods in interstate commerce.

59.     Likewise, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have and continue to trade on the extensive goodwill of Plaintiffs to induce customers to purchase a counterfeit version of Plaintiffs' products, thereby directly competing with Plaintiffs. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which Plaintiffs have amassed through its lengthy nationwide marketing, advertising, sales, and cumulative consumer recognition.

60.     Defendants knew or, by the exercise of reasonable care, should have known that their past, current, and continuing advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the counterfeit goods has and will continue to cause confusion and mistake or to deceive purchasers, users, and the public.

61.     In addition, by using Plaintiffs' trademarks in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit product. By their use of Plaintiffs' original photographs in association with the offer and sale of the counterfeit products, Defendants seek to further confuse the relevant public as to the source or sponsorship of their goods by Plaintiffs.

62.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

63.     As a direct and proximate result of Defendants' wrongful actions, Plaintiffs have been and will continue to be deprived of substantial sales of its genuine products.

64.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**COUNT V**

**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE
TRADE PRACTICES ACT (815 ILCS § 510/2)**

65.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 64.

66.     Defendants have engaged in acts violating Illinois law including, but not limited to, causing likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Plaintiffs representing that their products have Plaintiffs' approval when they do not, and

engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

67.     Defendants knew, or by the exercise of reasonable care should have known, that their past, current, and continuing advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the counterfeit goods has and will continue to cause confusion and mistake, or deceive purchasers, users, and the public.

68.     Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to its reputation and goodwill. Unless enjoined by this Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**COUNT VI**
**CIVIL CONSPIRACY**

69.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 68.

70.     Plaintiffs are informed and believes and thereon alleges that Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct including, without limitation, a concerted and collaborated effort to maintain the distribution, marketing, advertising, shipping, offer for sale, or sale of counterfeit products in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

71.     The intent, purpose, and objective of the conspiracy and the underlying combination of unlawful acts and misconduct committed by the Defendants was to undermine Plaintiffs and its business by unfairly competing against it as described above.

72.     The Defendants each understood and accepted the foregoing scheme and agreed to do their respective part, to further accomplish the foregoing intent, purpose, and objective. Thus,

by entering the conspiracy, each Defendant has deliberately, willfully, and maliciously permitted, encouraged, and/or induced all the foregoing unlawful acts and misconduct.

73.     As a direct and proximate cause of the unlawful acts and misconduct undertaken by each Defendant in furtherance of the conspiracy, Plaintiffs have sustained, and unless each Defendant is restrained and enjoined, will continue to sustain severe, immediate, and irreparable harm, damage, and injury for which Plaintiffs have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.      That Defendants, their affiliates, officers, agents, employees, attorneys, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

  i.      using ███████ Trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiffs, or is not authorized by Plaintiffs to be sold in connection with ███████ Trademarks;

  ii.     passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiffs' product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authority, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under ███████ Trademarks and associated with or derived from ███████ Trademarks;

  iii.    making, using, selling, and/or importing to the United States for retail sale or resale any products that infringing ███████ Trademarks;

iv.  committing any acts calculated to cause consumers to believe that Defendants' counterfeit products are sold under the authority, control, or supervision of Plaintiffs, or are sponsored by, approved of, or otherwise connected with Plaintiffs, including without limitation through use of Plaintiffs' original photographs and marketing text in connection with the offer or sale of counterfeit products;

v.  further infringing ███████████ Trademarks and damaging Plaintiffs' goodwill;

vi.  otherwise competing unfairly with Plaintiffs in any manner;

vii.  shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any ███████████ Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

viii.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell counterfeit products;

ix.  operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing ███████████ Trademarks or reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiffs to be sold in connection with ███████████ Trademarks; and,

21

x.   registering any additional domain names that use or incorporate any portion of ▮▮ ▮▮▮▮ Trademarks; and,

B.   That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i.   displaying images protected by ▮▮▮▮ Trademarks in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiffs' or is not authorized by Plaintiffs to be sold in connection with ▮▮▮▮ Trademarks; and

ii.   shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiffs, not authorized by Plaintiffs to be sold or offered for sale, and protected by the Plaintiff's trademarks or any reproductions, counterfeit copies, or colorable imitation thereof; and,

C.   That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

D.   Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: ▮▮▮▮ ▮▮▮▮▮▮▮▮; payment processors such as: PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, Twitter; Internet search engines such

as: Google, Bing, and Yahoo; webhosts for the Defendants Domain Names; and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of counterfeit products using ███████████ Trademarks; shall:

    i.    disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit Plaintiffs' ███████████ branded product using ███████████ Trademarks, including any accounts associated with the Defendants listed on Schedule A;

    ii.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeiting and infringing counterfeit product using ███████████ Trademarks; and,

    iii.    take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online stores from any search index; and,

E.    That each Defendant account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiffs' trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F.    For Judgment in favor of Plaintiffs against Defendants that they have: (a) willfully infringed ███████████ Trademarks in its federally registered trademarks pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiffs by Defendants' acts and conduct set forth in this Complaint;

G.     For Judgment in favor of Plaintiffs against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

H.     In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiffs' trademarks;

I.     That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    i.     making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiffs and that include any reproduction, copy or colorable imitation of the design claimed in the ███████ Design;

    ii.     aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the ███████ Design; and

    iii.     effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b); and

J.     Entry of an Order that, upon Plaintiffs' request, those with notice of the injunction, including, without limitation, any online marketplace platforms ███████████ ███████████████████████████ ; payment processors such as: PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, and Twitter; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names; and

domain name registrars shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe the ornamental designs claimed in the ███████ Design;

K.    That Plaintiffs be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiffs for Defendants' infringement of Plaintiffs' design patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

L.    That the amount of damages awarded to Plaintiffs to compensate Plaintiffs for infringement of the ███████ Design be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

M.    In the alternative, that Plaintiffs be awarded complete accounting of all revenue and profits realized by Defendants from Defendants' infringement of the ███████ Design, pursuant to 35 U.S.C. § 289;

N.    That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

  i.    using the ███████ Works or any reproductions, copies, or colorable imitations thereof in any manner with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized ███████ Products or is not authorized by Plaintiffs to be sold in connection with the ███████ Works;

  ii.    passing off, inducing, or enabling others to sell or pass off any product or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the ███████ Works;

iii.    further infringing the █████ Works and damaging Plaintiffs' goodwill;

iv.    shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiffs to be sold or offered for sale, and which directly use the █████ Works and which are derived from Plaintiffs' copyrights in the █████ Works; and

v.    using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiffs which are derived from Plaintiffs' copyrights in the █████ Works; and

O.  Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: █████ ██████████████████████████████████; payment processors such as: PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, and Twitter; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names; and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of infringing products using the Plaintiffs' copyrights; shall:

i.    disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiffs which reproduce the █████ Works or are derived from the █████ Works, including any accounts associated with the Defendants listed on Schedule A;

26

ii.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiffs which are derived from the ▮▮▮▮ Works; and

iii.   take all steps necessary to prevent links to the Defendant accounts identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant accounts from any search index; and

P.  For Judgment in favor of Plaintiffs against Defendants that they have: a) willfully infringed Plaintiffs' rights in her federally registered copyrights pursuant to 17 U.S.C. §501; and b) otherwise injured the business reputation and business of Plaintiffs by Defendants' acts and conduct set forth in this Complaint;

Q.  For Judgment in favor of Plaintiffs against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. §504, at the election of Plaintiffs, in an amount to be determined at trial;

R.  That Plaintiffs be awarded its reasonable attorneys' fees and costs; and,

S.  That Plaintiffs be awarded any and all other relief that this Court deems equitable and just.

Plaintiffs demand trial by jury as to all causes of action so triable.

Dated: January 28, 2025                          Respectfully submitted,

                                                 /s/ James E. Judge

                                                 Zareefa B. Flener (IL Bar No. 6281397)
                                                 James E. Judge (IL Bar No. 6243206)
                                                 Ying Chen (IL Bar No. 6346961)
                                                 Flener IP Law, LLC
                                                 77 West Washington Street, Suite 800
                                                 Chicago, Illinois 60602
                                                 (312) 724-8874
                                                 jjudge@fleneriplaw.com